IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| PHILADELPHIA INDEMNITY<br>INSURANCE COMPANY, | )<br>)<br>) | |
| Plaintiff, | )<br>) | |
| vs. | )<br>) | Case No. 6:20-CV-03065-MDH |
| ATLANTIC SPECIALTY<br>INSURANCE COMPANY | )<br>)<br>)<br>) | |
| Defendant. | )<br>) | |

## ORDER

Before the Court are Plaintiff Philadelphia Indemnity Insurance Company's ("Philadelphia") and Defendant Atlantic Specialty Insurance Company's ("Atlantic") cross-motions for summary judgment. For the reason set forth herein, Philadelphia's Motion (Doc. 50) is **DENIED**, and Atlantic's Motion is **GRANTED**. Summary judgment is entered in favor of Atlantic.

## BACKGROUND

This case arises from Philadelphia's claim that Atlantic failed to contribute its alleged pro-rata share to the indemnification of losses sustained by Philadelphia's and Atlantic's common insured Shoji Entertainments, Inc. ("Shoji"). Philadelphia alleges that the terms of each insurance policy place a common obligation on both Philadelphia and Atlantic to indemnify Shoji for a fire in 2017 and burst frozen water pipes in January 2018, and the terms of each insurance policy set forth the ratios at which each insurer is obligated to indemnify Shoji for the alleged commonly insured losses. Philadelphia claims that Atlantic has refused to contribute a pro-rata share of payment for the covered losses. Atlantic claims in response that it provided coverage under its

1

"difference in conditions" policy, which it claims covered Shoji for certain discrete risks not covered by Philadelphia. Atlantic argues that the losses suffered by Shoji are not covered by Atlantic's policy and therefore Atlantic is not required to contribute a pro-rata share of the amount paid by Philadelphia for Shoji's covered losses.

Philadelphia issued a policy of insurance to Shoji Entertainments, Inc. (hereinafter "Shoji") as named insured, having Policy No. PHPK1646281, with effective dates of April 30, 2017, to April 30, 2018 (hereinafter the "Philadelphia Policy"). Defendant Atlantic Specialty Insurance Company (hereinafter "Atlantic") issued a policy of insurance to Shoji as named insured, having Policy No. 790-02-21-67-0000, with effective dates of April 30, 2017, to April 30, 2018 (hereinafter the "Atlantic Policy").

Philadelphia's Ultimatecover Property coverage provided blanket limits of $11,932,835. Atlantic's DIC coverage included $10,000,000 limits for earthquake and flood. The premium for Philadelphia's Ultimatecover Property coverage was $14,641.00, while the premium for Atlantic's DIC coverage was little more than half of that amount, at $8,200.00.

On or about May 31, 2017, a fire occurred at Shoji's theater building located at 3260 Shepherd of the Hills Expressway, Branson, Missouri 65616-8104 (hereinafter the "Theater"), which caused damage to the Theater and the personal property located therein. On or about January 2, 2018, the pipes of the water sprinkler system in the Theater froze and burst, causing additional damage to the Theater and the personal property located therein.

Shoji submitted insurance claims to Philadelphia under the Philadelphia Policy, and to Atlantic under the Atlantic Policy, for damage to the Theater, damage to personal property that was located inside the Theater, and business income and extra expense losses resulting from the fire. Philadelphia asserts that it "reviewed the Atlantic Policy and determined that both the

2

Philadelphia Policy and the Atlantic Policy provide coverage for Shoji's claimed damage and losses to its Theater and personal property located at its Theater, as well as Shoji's claimed business income and extra expense losses." (Doc. 51 at 6).

Philadelphia demanded that Atlantic participate in the adjustment and payment of Shoji's losses based on Philadelphia's own interpretation of the Atlantic Policy. Atlantic refused that demand. Philadelphia adjusted and issued payments to Shoji for Shoji's insurance claims "so as to protect the interests of Shoji." *Id*. Philadelphia paid Shoji a total of $10,482,868.26 for losses arising from the fire, calculated as follows:

$4,056,249.00 for damage to the Theater resulting from the fire;

$4,276,619.26 for damage to personal property resulting from the fire;

$2,150,000.00 for business income and extra expense losses resulting from the fire.

Philadelphia paid Shoji a total of $791,633.76 for losses arising from the sprinkler incident, calculated as follows:

$229,729.27 for damage to the Theater resulting from the sprinkler incident;

$561,904.49 for damage to personal property resulting from the sprinkler incident.

Philadelphia again demanded that Atlantic repay in contribution to Philadelphia the amounts that Philadelphia paid Shoji which Philadelphia contends are actually owed by Atlantic, and Atlantic refused. Philadelphia brought this suit against Atlantic asserting claims for declaratory judgment (Count I), equitable contribution (Count II), equitable subrogation (Count III), unjust enrichment (Count IV), and non-contractual indemnity (Count V).

## STANDARD OF REVIEW

Summary judgment is proper where, viewing the evidence in the light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Reich v. ConAgra, Inc.*, 987 F.2d 1357, 1359

(8th Cir. 1993). "Where there is no dispute of material fact and reasonable fact finders could not find in favor of the nonmoving party, summary judgment is appropriate." *Quinn v. St. Louis County*, 653 F.3d 745, 750 (8th Cir. 2011). Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets the initial step, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To satisfy this burden, the nonmoving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## DISCUSSION

There is no dispute that summary judgment is appropriate in this case. There are no genuine issues of material fact. There is no dispute that the Philadelphia Policy covered Shoji's losses at issue. Atlantic does not assert that Philadelphia improperly adjusted the losses, nor does it assert that Philadelphia made improper valuations of the damages or made payments that were incorrect, inappropriate, or not sufficiently validated. It is purely an issue of contract interpretation. The only question is whether the Atlantic Policy may be interpreted as to cover the losses Shoji sustained due to the fire and water damage and require Atlantic to repay Philadelphia a pro-rata share of the amount Philadelphia paid to Shoji for the losses.

The Supreme Court of Missouri has long held that the general rules for interpretation of contracts apply to insurance policies. *Peters v. Employers Mut. Cas. Co.*, 853 S.W.2d 300, 301-302 (Mo banc. 1993) (citing *Haseltine v. Farmers' Mut. Fire Ins. Co.*, 263 S.W. 810, 813 (Mo. 1924); *Baker v. Keet–Rountree Dry Goods Co.*, 318 Mo. 969, 2 S.W.2d 733, 740 (1928)). Where insurance policies are unambiguous, they will be enforced as written absent a statute or public policy requiring coverage. *Rodriguez v. General Accident Ins. Co.*, 808 S.W.2d 379, 382 (Mo.

4

banc 1991); *Robin v. Blue Cross Hospital Service, Inc.*, 637 S.W.2d 695, 698 (Mo. banc 1982). If the language is ambiguous, it will be construed against the insurer. *Id.*

Under Missouri law, "[a]n insurance policy must be construed to give effect to the intent of the parties." *City of Lee's Summit v. Missouri Pub. Entity Risk Mgt.*, 390 S.W.3d 214, 219 (Mo. Ct. App. W.D. 2012) (*citing Golden Rule Ins. Co. v. R.S.,* 368 S.W.3d 327, 334 (Mo. Ct. App. W.D. 2012)). Additionally, "[t]he insurance policy must be construed as a whole, and the language of the policy is given its plain and ordinary meaning." *Id.*

A Court should look for the most reasonable construction of a contract. "An interpretation of a contract or agreement which evolves unreasonable results, when a probable and reasonable construction can be adopted, will be rejected." *Nooter Corp. v. Allianz Underw. Ins. Co., et. al,* 536 S.W.3d 251, 275 (Mo. Ct. App. E.D. 2017) (quoting *Belton Chopper 58, LLC v. N. Cass Dev., LLC*, 496 S.W.3d 529, 532 (Mo. Ct. App. W.D. 2016); and citing *CB Comm. Real Estate Group, Inc. v. Equity Part. Corp.*, 917 S.W.2d 641, 647 (Mo. Ct. App. W.D. 1996) ("In determining the intention of the parties, the courts should look for a reasonable and natural construction of their agreement")).

Under Missouri law, a party has the burden of proof as to each fact the existence (or non-existence) of which is essential to the claim for relief or defense being asserted. *See, e.g., State Farm Mut. Auto. Ins. Co. v. St. Louis County,* 601 S.W.2d 291, 294 n.1 (Mo. Ct. App. E.D. 1980). Thus, an insurer must prove the contents of any exclusions or limitations on the amount of coverage upon which it relies. *See, e.g., Ins. Co. of Pennsylvania v. West Plains Air,* 637 S.W.2d 444, 446 (Mo. Ct. App. S.D. 1982); *State Farm,* 601 S.W.2d at 294 n.1. Nonetheless, the burden of proving coverage is upon the person seeking coverage. *Auto-Owners Ins. Co. v. McGaugh*, 617

S.W.2d 436, 444 (Mo. Ct. App. W.D. 1981). In this case, Philadelphia bears the burden of proving coverage it is claiming applies under Atlantic's policy.

**Shoji Losses Are Not Covered by the Atlantic Policy**

The losses at issue stemmed from a fire and water damage from broken water pipes at Shoji's theater facility in Branson, Missouri. The losses were covered by the Philadelphia commercial property policy through its "Ultimatecover Property Coverage," which provided blanket limits on the Shoji building of $11,932,835 and $9,196,364 for Shoji's business personal property. Philadelphia's policy also provided business income and extra expense coverage for $2,150,000. *Id.* at 211. "Blanket coverage," as defined by the Missouri courts:

> invariably covers and attaches to every item of property described therein, so that if the loss of one item exhausts the whole amount of the policy the entire insurance must be paid, or, in other words a blanket policy is one which insures property collectively without providing in the event of a loss for a distribution of the insurance to each item.

*Norwood-Redfield Apartments Ltd. P'ship v. American Fam. Mut. Ins. Co.*, 2017 WL 2189464 at *3 (E.D. Mo., May 18, 2017) (quoting *Hale v. Cent. Mfrs. Mut. Ins. Co.*, 93 S.W.2d 271, 273 (Mo. Ct. App. 1936). The "Causes of Loss Form" specifically excludes coverage for losses caused by earthquake (Doc. 56, Ex. 1 at 185) and flood. *Id.* at 186.

The Atlantic Policy, in contrast, provided limited coverage for the Shoji building under the "Difference in Conditions Coverage Form" that is part of the Atlantic Inland Marine coverage. In general, a "difference in conditions," or "DIC" form is only meant to cover risks not covered by the underlying policy.

The "Limits of Insurance" language in the Atlantic Policy makes clear that the Difference in Conditions coverage only applies if the Declarations include a limit for the peril: "The most we will pay for loss or damage in any one occurrence is the applicable Limit of Insurance shown in the Declarations. *Separate Limits of Insurance are shown in the Declarations for Earthquake and*

*'Water Damage.'*" (Doc. 56, Ex. 2 at 49 (emphasis added)). The "Limits of Insurance" must in turn be read in the context of the next section, "Deductible": the Atlantic Inland Marine Declarations show deductibles under the Difference in Conditions coverage of $100,000 for "Earthquake Occurrence" and $100,000 for "Water Damage Occurrence." *Id.* at 19. "Water Damage," in turn, is defined in the form as "Flood, surface waters, waves, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not…" (Doc. 56, Ex. 2 at 52). No deductible category for the types of losses sustained here—fire or frozen water pipes—were included in the Declarations page. *Id.* Under the "Difference in Conditions Coverage Form," Atlantic will not pay for loss until the loss exceeds the deductible applicable to the perils shown in the Declarations page:

> *We will not pay for loss or damage in any one occurrence until the amount of the adjusted loss or damage before applying the applicable Limits of Insurance exceeds the Deductible shown in the Declarations.* We will then pay the amount of the adjusted loss or damage in excess of the Deductible, up to the applicable limit of insurance.
> Specific deductibles apply to:
> 1. Water Damage
> 2. Earthquake.

*Id*. at 49-50 (emphasis added). "[A] deductible by definition only applies to covered perils and can only sensibly be applied once coverage is determined to exist." *Penthouse Owners Assoc., Inc. v. Certain Underw. of Lloyd's of London*, 612 F.3d 383, 389 (5th Cir. 2010). Here, only water damage (flood) and earthquake were covered under the Atlantic DIC form.

By taking a piecemeal approach to the language in the Atlantic Policy, Philadelphia argues that the Policy does not limit coverage to losses stemming from water damage or earthquake. "[T]here is no language in the DIC FORM, or elsewhere in the Atlantic Policy, to the effect that coverage is only provided for perils for which a deductible is shown in the declarations." (Doc. 51 at 24). Philadelphia then relies entirely on two separate provisions from the Policy:

7

> **COVERAGE**
> We will pay for loss of or damage to Covered Property from any of the Covered Causes of Loss.
>
> …
>
> **Covered Causes Of Loss**
> Covered Causes of Loss means Risks of Direct Physical Loss or Damage to Covered Property except those causes of loss listed in the Exclusions.
>
> ***

(Doc. 51, Ex. E at 43-44). Philadelphia selects these two clauses and ignores the remaining provisions in the Policy that relate to them.

Philadelphia's attempted interpretation fails, and it is not a reasonable way to interpret Atlantic's Policy as a whole. First, the Atlantic policy's terms regarding deductibles show that the DIC coverage does not apply to the losses here. The Atlantic "Difference in Conditions Coverage Form" specifies under "Deductible": "We will not pay for loss or damage in any one occurrence until the amount of the adjusted loss or damage before applying the applicable Limits of Insurance exceeds the Deductible shown in the Declarations. . . ." and then states that specific deductibles apply to "Water Damage" and "Earthquake." *Id.* at 49-50 (emphasis added). The Atlantic Inland Marine Declarations, under the DIC section, lists a deductible for only two kinds of losses: "Earthquake Occurrence" and "Water Damage Occurrence." *Id.* at 19. The Atlantic policy, by its terms, does not apply to the losses at issue here, as payment under the policy is conditional on the loss exceeding the stated deductibles for specific perils, and no deductibles exist for the types of losses sustained by Shoji. *Id.* Accordingly, Atlantic has no obligation to pay for the losses here.

Second, the limits of insurance also show that the losses are not covered by the DIC form. Under "Limits of Insurance" in the Atlantic "Difference in Conditions Coverage Form," the policy

8

notes: "The most we will pay for loss or damage in any one occurrence is the applicable Limit of Insurance shown in the Declarations. *Separate Limits of Insurance are shown in the Declarations for Earthquake and 'Water Damage.'*" (Doc. 56, Ex. 2 at 49 (emphasis added)). The DIC section of the Declarations lists a $10,000,000 limit of insurance across from each word as follows:

```
Difference In Conditions
    Description of Property:
        Property Covered: Buildings, Business Personal
            Property, Business Income and Extra Expense.
    Valuation: Replacement Cost
    Any One Occurrence                              $10,000,000
    Building                                        $10,000,000
    Personal Property                                $6,612,380
    Earthquake Aggregate                            $10,000,000
    Earthquake Occurrence                           $10,000,000    $100,000
    Water Damage Aggregate                          $10,000,000
    Water Damage Occurrence                         $10,000,000    $100,000
```

*Id.* at 19. Under this plain language, the first category refers to covered occurrences generally, then below that, the types of property covered, and finally types of covered losses (earthquake and water damage) that might occur to the property listed. The only types of losses that have a limit of insurance are earthquake and water damage, which are thus the only types of losses to building or personal property that are covered. No limit is shown for fire or for damage from frozen pipes. Since earthquake and water damage are the only types of losses with a limit listed on the declarations page, these are the only types of loss covered under the DIC form.

In addition to expressly precluding coverage for losses other than earthquake or water damage, the above provisions in the DIC form and Declarations regarding limits and deductibles—as discussed above—clearly reflect the intent of the DIC coverage, which read as a whole, only covers earthquake and water damage losses. Since the losses at issue in this case were indisputably not attributed to water damage (as defined by the Atlantic Policy) or earthquake, the Atlantic Policy does not cover Shoji's losses. Accordingly, Atlantic does not owe a pro-rata share of the payments made to Shoji by Philadelphia.

9

Case 6:20-cv-03065-MDH   Document 66   Filed 02/08/22   Page 9 of 10

As to the cross-motions for summary judgment, Philadelphia's request for declaratory judgment (Count I) is denied. Therefore, the remaining causes of action Count II (equitable contribution), Count III (equitable subrogation), Count IV (unjust enrichment), and Count V (non-contractual indemnity) are also denied.

## CONCLUSION

For the foregoing reasons, Philadelphia Indemnity Insurance Company's Motion for Summary Judgment (Doc. 50) is **DENIED**. Atlantic Specialty Insurance Company's Motion for Summary Judgment (Doc. 54) is **GRANTED**. Summary judgment is entered in favor of Defendant Atlantic Specialty Insurance Company.

**IT IS SO ORDERED.**

Dated: February 8, 2022                              */s/ Douglas Harpool*
                                                     **Douglas Harpool**
                                                     **United States District Court**